## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| LIBERTY BELL MOVING & STORAGE, INC., | ) |
| Plaintiff, | ) ) |
| v. | )  Civil Action No. __ |
| TRANSGUARD INSURANCE COMPANY OF AMERICA, INC., | ) ) **Jury Trial Demanded** ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Liberty Bell Moving & Storage, Inc. ("Liberty Bell"), by and through its undersigned counsel, states the following as its Complaint against Defendant Transguard Insurance Company of America, Inc. ("Transguard"):

### THE PARTIES

1. Plaintiff Liberty Bell is a Maine corporation with a principal place of business in Windham, Maine.

2. Upon information and belief, Defendant Transguard is an Illinois corporation with its principal place of business in Naperville, Illinois.

3. Transguard is an insurance company licensed to do business in the State of Maine.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00 and there is complete diversity between the Parties.

1

5. Venue is proper pursuant to 28 U.S.C. § 1391 *inter alia* because a substantial part of the events or omissions giving rise to Liberty Bell's claims occurred in Cumberland County, Maine, and the property that is the subject of the action is located in Cumberland County, Maine.

## THE FACTS

**I.  The Policy Of Insurance**

6. Liberty Bell is a company engaged in the moving and storage business.

7. On or about June 21, 2016, Liberty Bell entered into a Contract for the Sale of Commercial Real Estate (the "Contract") to purchase real property and the improvements thereon located at 3 Mallison Falls Road, Windham, Maine (the "Property").

8. The improvements on the Property include three commercial / industrial warehouse buildings.

9. After entering into the Contract and prior to the closing of the sale contemplated thereby, Liberty Bell began to occupy the Property pursuant to an oral lease agreement with the seller, Buker Enterprises LLC.

10. Liberty Bell insured the Property and the improvements thereon through a commercial property policy of insurance purchased from TransGuard, policy number TCP 0000621 02, which provided coverage against casualty losses at the Property, among other things (the "Policy").

11. The Policy constitutes a contract between TransGuard and Liberty Bell.

12. The Policy included "functional replacement" coverage for the buildings at the Property.

13. Pursuant to the Policy, TransGuard agreed *inter alia* to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."

14. Under the Policy, the term "Covered Cause of Loss" included damage from fire.

15. The functional replacement coverage of the Policy provided that, in the event of a total loss to a building at the Property, TransGuard would pay "the cost to replace the damaged building on the same site … with a less costly building that is functionally equivalent to the damaged building," or, in the event of a partial loss, to pay the "cost to repair or replace the damaged portion of the building with less costly material, if available, in the architectural style that existed before the loss or damage occurred."

16. Pursuant to the Policy, Transguard also agreed to pay, *inter alia*, "costs that are a consequence of a requirement to comply with the minimum standards" of an applicable ordinance or law.

17. The applicable limit of insurance under the Policy was $2,400,000.00.

18. The applicable policy period of the Policy was November 1, 2016 to November 1, 2017.

19. Liberty Bell paid when due all premiums with respect to the Policy.

**II.  The Loss**

20. On March 16, 2017, at approximately 12:10 am, a fire broke out at one of the buildings at the Property, a three-story industrial / warehouse building with a finished space on its top floor (the "Building").

21. By the time the fire was extinguished, it had caused significant damage to the Building.

22. The State of Maine Fire Marshal's Office investigated the cause of the fire and determined it was set accidentally by a squatter against whom Liberty Bell had previously obtained a forcible entry and detainer judgment, requiring him to vacate the premises.

23. TransGuard has not disputed the cause of the fire.

24. TransGuard commissioned a report from an expert fire investigator, who reached a conclusion consistent with that of the Maine Fire Marshal's office.

25. The Town of Windham Fire Department prepared a fire report, which noted that the Building suffered "Extreme Damage" on all three of its floors. "Extreme Damage" is the highest level of damage, with the other options being "Minor Damage," "Significant Damage," and "Heavy Damage."

26. Liberty Bell timely submitted a claim to TransGuard with respect to the fire damage, which was assigned claim number 2017-12543 (the "Claim").

27. TransGuard has accepted liability on the Claim.

28. Liberty Bell has cooperated in all respects with TransGuard's investigation of the Claim.

29. Liberty Bell submitted to TransGuard a quote from PM Construction Co., Inc.—a reputable, local general contractor—for the replacement of the damaged Building.

30. According to the quote from PM Construction, the cost to replace the Building is $1,166,040.00.

31. After TransGuard received the quote from PM Construction, TransGuard asserted that the Building was not a total loss.

32. Subsequently, Liberty Bell submitted a separate quote from PM Construction to repair the damage to the Building.

33. According to the separate quote from PM Construction, the cost to repair the damage to the Building is $1,216,972.00.

34. Notwithstanding that Liberty Bell presented valid estimates for the replacement or repair of the damaged Building, TransGuard has failed and refused to honor its contractual obligations pursuant to the Policy.

35. To date, TransGuard has paid Liberty Bell only $135,960.00 on the building damage claim.

36. The amount paid by TransGuard is vastly insufficient to repair or replace the Building.

37. Despite that over nine months have passed since the fire, TransGuard has not procured a single estimate for repair or replacement of the Building from any contractor.

38. Liberty Bell has requested that TransGuard make further payment on the claim.

39. TransGuard rejected Liberty Bell's request for further coverage and payment under the Policy, and has denied its obligation to further indemnify Liberty Bell for the loss.

40. TransGuard has stated that it will make no further payments on the Claim.

COUNT I
(BREACH OF CONTRACT)

41. Liberty Bell repeats and realleges all of its previous allegations as if set forth fully herein.

42. The Policy constitutes a valid and legally enforceable contract between Liberty Bell and TransGuard.

43. TransGuard has breached its obligations to Liberty Bell under the Policy through its conduct as described above, including but not limited to its failure and refusal to pay the

amounts to which Liberty Bell is entitled under the Policy as a result of the fire damage to the Building.

44. All conditions precedent to bringing suit to enforce the terms of the Policy have been satisfied.

45. As a result of TransGuard's breach of contract, Liberty Bell has suffered and continues to suffer significant damages.

46. Liberty Bell demands trial by jury on all claims so triable.

WHEREFORE, Plaintiff Liberty Bell Moving & Storage, Inc. respectfully requests that the Court enter a Judgment against Defendant Transguard Insurance Company of America, Inc. for damages in an amount to be determined at trial, as well as interest, costs, attorneys' fees, and such other and further relief as the Court deems just and appropriate.

## COUNT II
### (VIOLATION OF MAINE UNFAIR CLAIMS SETTLEMENT PRACTICES ACT, 27 M.R.S.A. § 2436-A)

47. Liberty Bell repeats and realleges all of its previous allegations as if set forth fully herein.

48. The liability of TransGuard on the Claim is established and undisputed.

49. TransGuard has failed to effectuate a prompt, fair and equitable settlement of the Claim, without a reasonable basis to contest liability or the amount of damages, and has knowingly misrepresented to Liberty Bell facts or policy provisions relating to coverage.

50. TransGuard initially denied liability by representing to Liberty Bell that Liberty Bell did not possess an insurable interest in the Property.

51. In fact, Liberty Bell possessed an insurable interest in the Property, which TransGuard knew or should have known.

52. After Liberty Bell protested TransGuard's representation that it lacked an insurable interested in the Property, TransGuard conceded that Liberty Bell did, in fact, possess an insurable interest in the Property, and accepted liability on the Claim.

53. TransGuard has refused to pay damages in this matter despite that it has not presented a single estimate from a qualified contractor supporting its assertion of the cost to repair or replace the damaged Building would be.

54. TransGuard had an out-of-state structural engineer—not a qualified, local contractor—prepare a "Cost Estimate" that purports to quantify the fire damage (the "Cost Estimate").

55. The Cost Estimate is plainly deficient in numerous material respects, and does not accurately reflect local costs of construction.

56. The Cost Estimate is deficient in the following respects, among others:

   a. The Cost Estimate does not take local market and industry conditions into account, and does not accurately reflect local costs of construction. Mr. Gilewicz is not a contractor, and upon information and belief Mr. Gilewicz did not speak to any contractors in preparing the Cost Estimate to determine whether the Cost Estimate accurately reflected the amount that a local contractor would actually charge to perform the work specified therein;

   b. The Cost Estimate presents an alleged cost to replace three structural steel beams, but ignores that other steel beams were damaged in the fire and also require replacement;

   c. With respect to the steel beams, the Cost Estimate lists only the cost for materials; it does not include any cost for the labor to install the steel beams, and does not

include any cost for temporary bracing that would be required in order to remove and replace such structural members;

d. The Cost Estimate asserts that the roof decking and flooring on the second floor could be replaced with a 1" cementitious wood fiber deck material. However, the Building lacks joists, and therefore such a material likely would not be sufficient to satisfy load requirements and could not be used for such a purpose;

e. The Cost Estimate asserts that the entire roof could be installed at a cost of only $2,118, which is not accurate or realistic;

f. The Cost Estimate includes no money for repairing a stairway that was damaged in the fire;

g. The Cost Estimate includes no money for HVAC systems, even though there were functional heaters in the Building prior to the fire;

h. The Cost Estimate includes no money for plumbing, even though there was functional plumbing in the Building prior to the fire;

i. The Cost Estimate includes only $10,000 for electrical work, a sum that is insufficient given that the entire electrical system in the Building will require replacement, including lighting; and

j. The Cost Estimate does not include any money for finishes, despite that there was a finished space in the Building that was destroyed in the fire, which Liberty Bell had used and planned to continue to use as a break area and training space.

57. To date, TransGuard has not procured a single estimate from a local, qualified contractor to repair or replace the damaged Building.

58. TransGuard required nearly eight months to make a decision on the Claim, despite that it was given access to the Property and the Building immediately following the fire, and despite that Liberty Bell repeatedly requested a prompt decision.

59. After TransGuard decided that it would pay no more than $135,960.00 on the Claim, Liberty Bell requested that TransGuard reconsider its decision, and identified numerous deficiencies in the Cost Estimate relied upon by TransGuard including but not limited to those set forth above.

60. TransGuard simply ignored Liberty Bell's request that it reconsider its position, and did not respond to communications from Liberty Bell specifically requesting a response.

61. TransGuard failed to acknowledge and review the Claim within a reasonable time following receipt of written notice by the insurer of the Claim.

62. TransGuard failed to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to the Claim.

63. As a result of the foregoing violations of 27 M.R.S.A. § 2436-A, Liberty Bell has suffered and continues to suffer significant damages.

64. Liberty Bell demands trial by jury on all claims so triable.

WHEREFORE, Plaintiff Liberty Bell Moving & Storage, Inc. respectfully requests that the Court enter a Judgment against Defendant Transguard Insurance Company of America, Inc. for damages in an amount to be determined at trial, as well as costs and disbursements, attorneys' fees and interest in the amount of 1.5% of Liberty Bell's damages per month pursuant to 27 M.R.S.A. § 2436-A, and such other and further relief as the Court deems just and appropriate.

Dated: December 22, 2017

*/s/ Eben M. Albert*

Eben M. Albert, Bar No. 4311

Attorney for Liberty Bell Moving & Storage, Inc.

BERNSTEIN SHUR
100 Middle Street
P.O. Box 9729
Portland, ME 04104-5029
(207) 774-1200