UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LIBERTY BELL MOVING<br>& STORAGE, INC.,<br><br>      *Plaintiff*<br><br>v.<br><br>TRANSGUARD INSURANCE<br>COMPANY OF AMERICA, INC.,<br><br>      *Defendant* | No. 2:17-cv-00495-GZS |

### *MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO COMPEL APPRAISAL AND STAY PROCEEDINGS*

In this insurance coverage action, the defendant, Transguard Insurance Company of America, Inc. ("Transguard"), moves over the plaintiff's objection to (i) compel appraisal of the damaged real property at issue and (ii) stay this action until the appraisal process is complete. The parties' central disagreement is over whether or not Transguard waived its contractual right to invoke appraisal. Because I find that Transguard did not waive that right, I grant its motion to compel appraisal and for a stay of these proceedings. However, I also set a deadline of January 31, 2019, for the completion of the appraisal process.

### I.  Background[1]

The property that is the subject of this action, a nearly century-old building in Windham, Maine, caught fire on March 16, 2017. *See* Defendant Transguard Insurance Company of America, Inc.'s Motion To Compel Appraisal and To Stay Further Discovery and Proceedings ("Motion") (ECF No. 35) at 2; Opposition to Motion To Compel Appraisal and To Stay ("Opposition") (ECF

---

[1] The parties have presented facts that conflict in some ways; however, those conflicts are immaterial to the resolution of this motion. Hence, I take agreed-upon or uncontested facts at face value.

No. 51) at 3. The next day, the plaintiff, Liberty Bell Moving & Storage, Inc. ("Liberty Bell"), notified Transguard of the loss. *See* Motion at 2. On April 19, 2017, at Transguard's request, Liberty Bell provided an estimate of the value of the loss in the amount of $1,166,040. *See* Motion at 2; Opposition at 3-4; *see also* Exh. 1 (ECF No. 32-1) to Opposition to Motion To Quash Subpoena or for Protective Order ("Subpoena Opposition") (ECF No. 32). On May 19, 2017, Transguard engaged its own inspector, who inspected the building on May 25, 2017, and produced a report on June 30, 2017. *See* Motion at 3; Opposition at 4. On August 29, 2017, Transguard provided Liberty Bell with its own estimate of a cost of $135,960 to restore the building to its pre-fire condition. *See* Motion at 3; Opposition at 5. Liberty Bell responded with a $1,216,972 cost estimate on October 2, 2017. *See* Motion at 4; Opposition at 5. Transguard, in turn, informed Liberty Bell on October 26, 2017, that its peer reviewer had reaffirmed its prior estimate. *See* Motion at 4; Opposition at 5. Transguard proposed a joint inspection of the property by the parties' respective engineers, but the parties could not agree on a schedule to complete it. *See* Motion at 5; Opposition at 5-6; *see also* Exh.12 (ECF No. 32-12) to Subpoena Opposition at 6.

Liberty Bell made a final demand on December 6, 2017, following which it filed this suit on December 22, 2017. *See* Motion at 5; Opposition at 6. The summons was returned executed on January 8, 2018, and Transguard filed its answer on February 20, 2018, following the court's grant of two consented-to motions to extend its time to answer. *See* ECF Nos. 5-7, 10-12. The court entered a scheduling order on February 21, 2018. *See* ECF No. 13. From March 14, 2018, through July 11, 2018, the court granted a series of four unopposed or joint motions to extend deadlines, two of which accommodated the parties' unsuccessful effort to settle the case through a May 7, 2018, judicial settlement conference, *see* ECF Nos. 14-15, 19, 21-26.

Transguard proposed to have a neutral third-party estimator provide a "nonbinding opinion" as to the value of the loss, and Liberty Bell rejected that proposal on July 27, 2018. *See* Motion at 5 & Exh. A (ECF No. 35-1) thereto; Opposition at 17-18. On August 7, 2018, Transguard made a written demand for appraisal, which Liberty Bell rejected on August 7, 2018. *See* Motion at 5; Opposition at 17. Transguard then filed this motion on August 20, 2018. *See* ECF No. 35. On October 24, 2018, I heard oral argument on the motion. *See* ECF No. 62.

Transguard's request for appraisal is based on two provisions contained in the parties' insurance contract. The first, an endorsement to the Common Policy Conditions and the Commercial Property Conditions, provides:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Exh. B (ECF No. 35-2) to Motion at 80. The second, an endorsement to the Maine – Standard Fire Policy Provisions, provides:

> In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company

3

shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting that appraiser and the expenses of appraisal and umpire shall be paid by the parties equally.

*Id*. at 98, 100.

## II. Applicable Legal Standard

In their briefs, both parties analogize the question of waiver of the right to an appraisal to the question of waiver of the right to arbitration. *See* Motion 10-15; Opposition at 7-9. The analogy is an apt one: both rights derive from a contractual agreement to utilize an extrajudicial method of resolving all or part of a dispute. Hence, in determining whether Transguard has waived its right to an appraisal, I apply the test for determining whether a party has waived its right to arbitration, which involves inquiry into "whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014).

In turn, "[t]hat determination is informed by a salmagundi of factors, including: the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the opposing party would be prejudiced." *Id*. "The party advocating waiver has the burden of demonstrating prejudice." *Id*.[2]

## III. Discussion

For the reasons discussed below, I conclude that one factor, the length of Transguard's delay, does not cut for or against a finding of waiver, and the remaining factors weigh against a

---

[2] Transguard argues that Maine law applies to the question of whether the appraisal provision should be enforced. *See* Motion at 10. I need not reach this choice of law issue, as relevant Maine law is generally consistent with the factors outlined by the First Circuit in *Joca-Roca*. *See generally id.* at 10-13.

4

finding of waiver. Most notably, Liberty Bell fails to carry its burden of demonstrating that the appraisal proceeding invoked by Transguard would cause it to suffer unfair prejudice.

### A. Length of Delay

Liberty Bell cites caselaw from the United States District Court for the District of Texas for the proposition that an appraisal is meant to occur prior to the commencement of litigation. *See* Opposition at 6 (citing *Adami v. Safeco Ins. Co. of Ind.*, CASE NO. 4:17-CV-574, 2018 WL 501093, at *5 (E.D. Tex. Jan. 22, 2018)). It asserts that "'the proper point of reference for determining whether an insurer waived the right to invoke appraisal by delay is the point at which the insurer knew the appraisal clause could be invoked because of a disagreement over the amount of damages, that is, the point of impasse with the insured,' and not the subsequent point of initiation of litigation." *Id*. at 13 (quoting *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, Civil Action No. H-09-1736, 2010 WL 413687, at *5 (S.D. Tex. Jan. 27, 2010)). Liberty Bell asserts that Transguard "first anticipated litigation against Liberty Bell due to disagreement over the amount of its claim no later than April 19, 2017, or roughly fifteen-and-a-half months prior to demanding appraisal." *Id.* Liberty Bell argues that, even if the court is inclined to be more generous to Transguard in determining when it first knew it would invoke appraisal, the relevant date should be no later than "mid-November 2017," when "Transguard stated that it would consider the claim finally settled if Liberty Bell declined the joint inspection, which Liberty Bell did." *Id*.

While invoking an appraisal provision prior to suit is no doubt ideal, First Circuit precedent suggests that the relevant interval for purposes of assessing whether there has been an undue delay is the time between the filing of suit and the invocation of the right to an appraisal. *See, e.g., Joca-Roca*, 772 F.3d at 949; *Wilson v. Bodnar*, Civil No. 09-544-P-H, 2010 WL 3730199, at *14 (D. Me. Sept. 14, 2010) (rec. dec., *aff'd in part, rev'd in part on other grounds*, Nov. 4, 2010). That

5

interval, in this case, is seven and a half months, which is in line with decisions cited both by Transguard finding no waiver, *see* Motion at 14 (citing, *e.g.*, *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 19 (1st Cir. 1986) (seven months); *J & S Construction Co. v. Travelers Indem. Co.*, 520 F.2d 809, 809-10 (1st Cir. 1975) (13 months)), and by Liberty Bell finding waiver after similar or shorter periods of time, *see* Opposition at 13-14 (citing, *e.g.*, *Joca-Roca,* 772 F.2d at 947-49 (nine months); *Caribbean Ins. Servs., Inc. v. Am. Bankers Life Assurance Co. of Fla.*, 715 F.2d 17, 18 (1st Cir. 1983) (six months)).

This factor, hence, does not weigh in favor of either party.

### B. Movant's Participation in Litigation

Liberty Bell argues that Transguard's invocation of the appraisal provision is nothing more than an attempt to utilize a different forum when its prospects in this court are dimming. *See* Opposition 16-18. It cites authority for the proposition that, if that is Transguard's reason for invoking appraisal, its motion should be denied. *See id.* at 16-17. Liberty Bell infers that Transguard was trying to get another bite at the apple because it invoked its right to appraisal "just two-and-a-half weeks after receiving Liberty Bell's [July 20, 2018, expert] designations," which were "broadly supportive of Liberty Bell's claims and pre-litigation position." *Id.*

By contrast, Transguard asserts that it "demanded appraisal because [Liberty Bell] ha[d] serially rejected its other proposals to try to resolve extra-judicially the issue of the amount of loss for property damage[,]" most recently, on July 27, 2018, rejecting Transguard's suggestion that a neutral third party inspect the Windham property and provide a non-binding opinion on the amount of the loss. Motion at 1-2.

Liberty Bell asserts that Transguard's explanation is not a "rational" one, Opposition at 17; however, it is equally, if not more, plausible that Transguard invoked its appraisal right on August

6

7, 2018, in response to Liberty Bell's July 27, 2018, rejection of its most recent attempt to resolve the issue of the value of the loss extrajudicially than in response to Liberty Bell's July 20, 2018, expert designations.

Liberty Bell also catalogues a series of actions by Transguard that it contends are "inconsistent with any intention to invoke the appraisal remedy." Opposition at 15-16. Most of those actions, some of which could cut either way, are listed without accompanying authority as to their relevance to waiver. *See id.* However, Liberty Bell cites authority that (i) filing an answer without asserting appraisal as an affirmative defense and (ii) seeking discovery that a party "would not be entitled to receive in an appraisal or arbitration proceeding" are indicative of waiver. *Id.* (citing *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1371 (Ariz. Ct. App. 1994), for the first point, and *Zwitserse Maatschappij van Levensverzekering en Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993), for the second).

Liberty Bell's authority is not persuasive. First, I am not prepared to rule that filing an answer without asserting appraisal as an affirmative defense is a *per se* waiver based solely on the authority of a single state court decision, where this court has indicated otherwise. *Cf. Bodnar*, 2010 WL 3730199 at *14-15 (holding that failing to raise arbitration in a motion to dismiss did not waive right to arbitration). Second, *Zwitserse* highlights one of the ways in which arbitration is an imperfect analogue. Arbitration divests the court of jurisdiction, unlike appraisal, which pertains only to a discrete portion of the action. For instance, it is within my discretion to grant Transguard's motion to compel, while denying its stay and allowing discovery to proceed. The timing of Transguard's invocation of its right to appraisal, thus, has no impact on the scope of discovery to which it would otherwise be entitled.

For these reasons, consideration of this factor weighs against a finding of waiver.

## C. Quantum of Discovery and Other Litigation Activities

Liberty Bell represents that it "incurred significant expense to engage four highly qualified, reputable experts . . . to opine regarding the scope of damage to the building, the needed repairs, and the likely cost thereof[,]" Opposition at 10, and that it "expend[ed] significant time and effort in responding to" a motion by Transguard to quash a subpoena that it had served on a third party, *id.* at 16. It cites *Joca-Roca* for the proposition that "the required showing of prejudice is 'tame at best' and that prejudice may be 'inferred from the necessary expenditures' of litigation[.]" *Id.* at 9 (quoting *Joca-Roca*, 772 F.3d at 949).

Transguard also relies on *Joca-Roca*, arguing that it cuts against a finding that Liberty Bell has met its burden of demonstrating undue prejudice. *See* Defendant's Reply Memorandum in Support of Motion To Compel Appraisal and To Stay Further Discovery and Proceedings ("Reply") (ECF No. 55) at 2, 6-7.

Tellingly, Liberty Bell avoids discussing the details of the litigation costs in *Joca-Roca*. *See* Opposition at 9-10. The contrast between the costs incurred in *Joca-Roca* and those incurred in this action is considerable. In *Joca-Roca*, "the parties conducted sixteen depositions, propounded and answered interrogatories, and produced and exchanged thousands of pages of documents[,]" and "the magistrate judge held no fewer than four telephone conferences to resolve discovery disputes and scheduling conflicts." *Joca-Roca*, 772 F.3d at 947. In this case, by contrast, following a series of deadline extensions and a judicial settlement conference, the parties have designated experts, briefed and argued a motion to quash, and engaged in some document discovery. *Compare id.* at 947, 949 *with* Opposition 10, 16.

Whereas the parties in *Joca-Roca* had engaged in extensive deposition practice, *see Joca-Roca*, 772 F.3d at 947, the parties in this case had not conducted a single deposition at the time

8

Transguard filed its motion to compel, *see* Motion at 6. At oral argument, counsel for Liberty Bell emphasized that, although the parties had not conducted depositions, Liberty Bell had incurred equivalent costs by engaging expert witnesses. However, this court has previously held that expert costs "are not enough to establish the necessary prejudice" for waiver. *Bodnar*, 2010 WL 3730199 at *15.[3]

Consideration of this factor, thus, weighs against a finding of waiver.

### D. Proximity of Demand to Trial Date

At the time Transguard filed its motion to compel appraisal on August 20, 2018, the trial-ready date was November 5, 2018. *See* ECF Nos. 26, 35. Neither party discusses this issue, which weighs against a finding of waiver.

### E. Prejudice to Opposing Party

For the reasons discussed above, I have concluded that Liberty Bell falls short of demonstrating that it will suffer unfair prejudice as a result of litigation costs incurred prior to Transguard's invocation of its right to an appraisal.

However, Liberty Bell takes an expansive view of the prejudice it has suffered, citing not only litigation costs but also the further, and its view greater, prejudice of delay in its ability to repair the damaged Windham property. *See* Opposition at 10-11. It asserts that the building "has been sitting vacant – burned-out, unsafe, and unusable" and "is a public safety hazard and a significant liability risk." *Id*. at 10. It represents that it long ago exhausted the business

---

[3] Liberty Bell attempts to distinguish *Bodnar* on the basis that "the party asserting arbitration in *Bodnar* had not demanded arbitration in an initial motion to dismiss, but did so expeditiously thereafter," prompting the court to note that the "amount of litigation in [that] case has been minimal." Opposition at 14 n.8 (quoting *Bodnar*, 2010 WL 3730199, at *15). Yet, as discussed above, the timing of Transguard's invocation of its right to an appraisal does not cut for or against a finding of waiver, and the litigation costs on which Liberty Bell relies – the expenditures of designating experts and litigating a motion to quash a subpoena – are similar to those claimed in *Bodnar*. *See Bodnar*, 2010 WL 3730199, at *15 (plaintiff asserted that she had "incurred 'thousands of dollars' of expenses on legal fees and expert witnesses").

interruption coverage of its insurance policy with respect to its loss of a three-year lease of the entire building that was to have begun on April 1, 2017. *Id*. at 10-11.

Liberty Bell cites no authority for the proposition that business losses incurred as a result of the parties' ongoing insurance coverage dispute properly are considered in assessing the prejudice caused by Transguard's delay in invoking its right to an appraisal. *See id*. That is not surprising: those losses would occur regardless of the means by which the parties resolved their underlying dispute. While, theoretically, the timing of Transguard's invocation of its appraisal right could prolong this litigation, thereby increasing Liberty Bell's overall business losses, it is far from clear that this will be the case. Indeed, Transguard suggests that the invocation of the appraisal right could speed the resolution of the parties' dispute, *see* Reply at 5 – also a plausible outcome.

Liberty Bell, thus, fails to demonstrate that it is likely to suffer unfair prejudice in the form of incrementally greater business losses as a result of Transguard's invocation of its appraisal right.

Consideration of this factor, hence, weighs against a finding of waiver.

### IV. Other Issues

The parties advance several other arguments that are not dispositive of this motion, or that I decline to reach. First, Liberty Bell argued in its opposing brief, and more forcefully through counsel at oral argument, that appraisal is not a practical mechanism for determining the value of its loss. *See* Opposition at 18-19. While this may be so, Liberty Bell cites no authority for the proposition that a court may conclude that a party has waived a contractual right to an appraisal simply because the opposing party believes that its enforcement will lead to inefficiency. Similarly, the parties' arguments about whether an appraisal likely will or will not resolve this

matter in its entirety do not bear on the merits of the motion to compel. *See* Motion at 1; Opposition at 11-12.

Finally, I find it unnecessary to reach Transguard's contested argument that the parties' insurance contract contains two nonwaiver provisions that necessitate a finding of no waiver. *See* Motion at 8-10; Opposition at 19-20.

## V. Stay

When evaluating a request for a stay, "courts will consider a plaintiff's interest in proceeding expeditiously, any hardship to the defendant that would result from a stay, the convenience of the court, and any third party or public interest that might exist." *Gladu v. Ross*, 2:15-cv-00274-DBH, 2016 WL 6441009, at *2 (D. Me. Oct. 31, 2016).

Liberty Bell's interest in proceeding expeditiously is considerable. Liberty Bell has repeatedly noted that the burned building is a hazard and a financial drain and is continuing to deteriorate due to inclement weather. *See* Opposition at 10-11. Yet, it is not clear that a stay to permit the contractual appraisal process is antithetical to that interest, particularly in view of the deadline for completion of that process that I impose, below. On the other hand, Transguard, which has sought the stay, will suffer no hardship from it, and the convenience of the court weighs in favor of its grant. Without a stay, discovery would continue in earnest. But the appraisal process may resolve the issue of the value of the loss to Liberty Bell, and continued discovery on that point would be, at best, duplicative. To balance these competing interests, I grant Transguard's request for a stay but set an approximately two-month deadline for the completion of the appraisal process, as outlined below.

## VI. Conclusion

For the foregoing reasons, Transguard's motion to compel appraisal and for a stay is **GRANTED**, on condition that the appraisal be completed no later than January 31, 2019. The Clerk's Office is **DIRECTED** to schedule a status teleconference with the parties at the earliest convenience of the court and counsel following that date, and all proceedings in this matter are **STAYED** until the status teleconference.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 27th day of November, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge